MR. JUSTICE GULBRANDSON,
dissenting.
I respectfully dissent.
I would affirm the decision of the trial judge to exclude the offered depositions of State employees.
The State had propounded two sets of interrogatories to plaintiff, asking for identification of witnesses. Plaintiff never identified deponents as proposed witnesses although the interrogatories were continuing in nature, failed to list deponents in its proposed pre-trial order just prior to trial, and made no effort to subpoena said deponents. This Court, in Kopischke v. First Continental Corp. (1980), 187 Mont. 471, at 510-511, 610 P.2d 668, at 689, upheld the exclusion of a deposition which would indicate that Rule 32(a) should not be construed nor implemented in a void. The trial judge’s finding of fact no. 40 clearly indicates that he was exercising his discretionary power to prevent an abuse of discovery. This Court, in Massaro v. Dunham (1979), 184 Mont. 400, at 404-405, 603 P.2d 249, at 251-252, stated:
“The District Court has the inherent discretionary power to control discovery. That power is based on the District Court’s authority to control trial administration ... In controlling discovery, the District Court must regulate traffic to insure a fair trial to all concerned, neither according one party an unfair advantage nor placing the other party at a disadvantage.
“. . . Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation. (Citations omitted.)”
I also do not concur in the majority’s decision to apply the Stenersón rationale to the underrun situation in this case. In my view, *497 there is substantial evidence in the record to support the trial judge’s findings of fact and conclusions of law.
Several pertinent findings read as follows:
“12. The state’s invitation to bid and standard specifications called for unit price bids on listed work items. Two contract work items listed were item 111-030-000 (Excavation-Unclassified Borrow) in the amount of 1,658,857 cubic yards, and item 112-001-000 (Compaction Roadbed) in the amount of 1,930,034 cubic yards. The State’s standard specifications . . . concerning bid schedule quantities state:
“ ‘02.04 INTERPRETATION OF QUANTITIES IN BID SCHEDULE. The quantities appearing in the bid schedule are approximate only and are prepared for the comparison of bids. The unit prices to be tendered by the bidder are to be tendered expressly for the scheduled quantities as they may be increased or decreased within the restricting percentage hereinafter stipulated. Payment to the contractor will be made only for the actual quantities of work performed and accepted or materials furnished in accordance with the contract.’
“13. The material to be used as unclassified borrow was to come from contractor furnished sources, which was not unusual to the industry. Since such sources, were not identified until after the contract was awarded, the state could not test unclassified borrow material that would actually be used prior to estimating the quantities used in the bid schedule.
“16. Rather than basing its bid on unit prices, Clark Bros, estimated the total cost of constructing the highway embankment in place, and then used the state’s estimated quantities of unclassified borrow and roadbed compaction as divisors into its total projected costs to obtain unit prices for the borrow and compaction. By using such method, instead of that specified by the standard specs, plaintiff assured itself of claiming a loss if there were an underrun below the estimated quantities, and claiming it should be paid more if there were an overrun above the estimated quantities for these items. William Clark also acknowledged his awareness that contractors were not to submit unbalanced bids.
“17. The method used by plaintiff to compute unit prices also ignored these factors if there were an underrun: (a) Less equipment would be needed, or it would be needed for a shorter period, (b) *498 Less hauling, fuel and manpower expense would be incurred, (c) Less landowner royalty would have to be paid for borrow.
“30. The plain meaning and clear intent of standard specifications 02.04, 04.02 and 09.03 are that changes in quantity may occur in the actual performance of contract work between anticipated or estimated quantities, and actual quantities used, and in such event, the contractor will be paid at contracted unit prices for actual quantities used and will bear the risk of loss for changes of quantity of less than 25%, for major items. The changes of the unclassified borrow and road compaction in this case were both less than 25%, and the testimony of Roger Blossom indicated this was not uncommon.
“31. Plaintiff cannot be said to have justifiably relied on exact amounts of borrow and compaction work to do when the bid proposals and contract specifically provided the amounts were estimates and subject to increase or decrease, when plaintiff’s officers were well acquainted with such terms and conditions, and when William Clark testified an overrun or underrun didn’t much affect the total cost of a project and that plaintiff’s bid would not have been much different whether the state estimated a round figure or specific amount of unclassified borrow or road compaction.”
The trial judge, in an explanatory comment to his findings, stated:
“It is difficult to see how the state could make it any clearer to contractors bidding on highway jobs that various parts of the work to be done, such as borrow excavation and compaction, are just estimates and not specific amounts of materials to be supplied. If the contract terms and provisions are too loose in allowing for a 25% variation on such items, the contractor’s association or the individual bidder should request amendment thereof before a contract is signed, but after execution, the court is ‘not to insert what has been omitted or to omit what has been inserted’ (Section 1-4-101, MCA 1983). As an experienced bidder and contractor, plaintiff must be held to the plain terms of the contract, as well as defendant.”
I concur in that statement and would affirm the decision of the trial judge.